L. & N. RAILROAD COMPANY v. JAMES ERBY.
and

L. & N. RAILROAD COMPANY v. PARALEE ERBY.
Consolidated Cases.

Eastern Section.   February 11, 1928.

Petition for Certiorari denied by Supreme Court, April 7, 1928.

W. M. Cox, L. H. Carlock and E. H. Powells, of Knoxville, for appellant.

Rogers & Troutman, of LaFollette, for appellee.

SENTER, J.   These two cases were consolidated by consent and tried together before the same court and jury, with separate verdicts rendered in each case, and one bill of exceptions for both cases, with the agreement that the two cases would be heard in this court on one record.   The cases are improperly styled in this court, the

defendant below, L. & N. Railroad Co., having appealed from the respective judgments. However, for convenience we will refer to the parties as in their original status in the court below, as plaintiff and defendant.

The two cases grew out of alleged personal injuries sustained by Paralee Erby, who was a passenger on the train of defendant, and received her injuries while alighting from the train at Duff, a station on defendant's railroad. Paralee Erby was the wife of James Erby. Two suits were filed, one by Paralee Erby for damages resulting from the alleged personal injuries sustained by her, medicine and doctor's bills. She sued for the sum of $5000. James Erby sued for the alleged loss of services of his wife as the result of her alleged personal injuries, and also for expenses incurred for medicine and doctor's bills. At the trial of the cases the jury returned a verdict in favor of plaintiff in the Paralee Erby case for $2000, and a verdict in favor of James Erby in the sum of $750. Motions for a new trial were made in the respective cases by the defendant. Both motions for a new trial were overruled by the court, and judgments rendered on the jury verdicts for the respective amounts of $2000 in the case of Paralee Erby, and $750 in favor of James Erby, and the costs of the cases respectively.

From the action of the court in overruling its motions for a new trial in the respective cases and rendering judgment for the respective amounts, the defendant Railroad Company prayed and was granted appeals to this court, which appeals were duly perfected, and errors assigned in the respective cases.

By the first assignment of error it is said that the court erred in overruling its motions for a new trial, and in rendering judgments in accordance with the jury verdict, for the reason that there was no evidence to support the verdict. By the second assignment of error it is contended that the court erred in overruling said motions for a new trial because the respective verdicts of the jury were so excessive as to indicate, passion, prejudice and caprice on the part of the jury. By the third assignment of error the correctness of the charge of the court with reference to the measure of damages in the Paralee Erby case is challenged. By the fourth assignment of error the correctness of the charge of the court with reference to the measure of damages in the James Erby case is challenged. By the fifth and sixth assignments of error the ruling of the court, and his action thereon, in admitting certain evidence over the objections of defendant, is assigned as error.

The declaration in the case of Paralee Erby alleges in substance that on the 8th day of September, 1924, she was a passenger on one of defendant's passenger trains, and when the train reached her station, Duff, it stopped, and the servants of the defendant opened

the door to the coach in which she was riding and called the station, and directed passengers to that station to get off, and that Paralee Erby undertook to get off of the train, and got to the steps, and started down the steps, when the engineer, or someone in charge of the train, carelessly and negligently "caused said train to jerk and jump or bounce forward and backward" with such force as to throw said Paralee Erby with force and violence off of the steps of the train and to the ground, and that she was thereby "injured and wounded in the knees, legs, back, kidneys and body, all of which caused her to suffer a great amount of pain and sickness, and has rendered her permanently crippled and disabled for life, and also caused her to expend a large sum of money, to-wit ——————— dollars, for treatment, medicine and doctoring, wherefore she sues the defendant for the sum of $5000, etc."

The declaration in the case of James Erby makes substantially the same averments as to the acts of negligence complained of; the nature and extent of the personal injuries sustained by Paralee Erby, with the additional averrments that because of said injuries his said wife was permanently disabled and rendered unable to render him any service, and also caused him to expend a large sum of money for treating and providing medicine for his said wife. He also sues for the sum of $5000, alleging that to have been the sum that he was entitled to recover as damages.

To the respective declarations the defendant filed pleas of not guilty.

There is no conflict in the evidence as to Paralee Erby having been a passenger on the train at the time of the alleged injuries. There is no conflict in the evidence on the question of her having been injured while alighting from the train at the station Duff. There is a decided conflict in the evidence on the question as to whether there was any movement of the train, jerking or otherwise, at the time Paralee Erby was getting off of the train. She states that when the train came to a stop at her station, she left her seat in the coach and went onto the coach platform, and was in the act of descending the steps, and as she was stepping from the first to the second step, the train gave a sudden jerk or lurch which threw her violently from the steps to the ground, resulting in the injuries complained of. She is corroborated in this statement by at least two other witnesses who testified on the subject. The evidence of the witnesses for the defendant is that there was no sudden movement of the train, or any movement of the train after the train came to a stop and while Paralee Erby was in the act of alighting from the train. There being some evidence to support the averments of negligence complained of, this court cannot disturb the verdict of the jury on appeal. In fact it is not insisted by appellant that there was

no evidence to support the verdict, although the character of the evidence is sharply criticized by appellant in its brief.

On the question presented by the fifth and sixth assignments of error, to the effect that the evidence admitted by the court over the objections of defendant, was incompetent, because the declarations did not present the issue, or acts of negligence sought to be proved, we cannot agree that the admission of this evidence by the court was reversible error. The evidence complained of under the fifth assignment of error is as follows:

"Q. Did they have a colored porter on that train? A. No, sir.

"Q. They did sometimes, didn't they? A. Not on that train for quite a while.

"Q. Well, they do have colored porters on some trains? A. Yes, sir.

"Q. Did they have a colored porter on that train that morning? A. No, sir."

This evidence was objected to on the ground that the declaration did not allege as an act of negligence on the part of defendant that it did not have a colored porter on the train, but the sole negligence consisted in the averment that the train jerked, causing the plaintiff to be thrown violently to the ground from the steps. We cannot see the materiality of the evidence in question, or that it threw any light on the act of negligence alleged in the declaration. Whether it was necessary or usual to have a colored porter to assist colored passengers from the train was not an issue in this case. However, we cannot see that the jury was in any way prejudiced by this evidence.

The sixth assignment of error complains of the action of the court in admitting over the objection of defendant the evidence of W. S. Bailey, as follows:

"Q. Mr. Bailey, on the morning that Paralee Erby was hurt, did you have any box, or step, or anything for the passengers to step down on, down to the ground? A. No, sir."

This evidence was objected to on the same grounds as discussed under the fifth assignment of error, and what we have said with reference to the evidence complained of under the fifth assignment is equally applicable.

The portion of the charge made the basis of the third assignment of error is in the following words:

"In the event you should find in favor of the plaintiff, Paralee Erby, you should, in making up your verdict, take into consideration the nature and extent of her injuries which she sustained, if any, the amount of mental and physical pain she suffered on account of same, medical expenses, and nurse hire, if any was incurred, and award her administrator, James Erby,

such a sum as will reasonably compensate him from such injuries, since it is shown in the proof that she is dead, and that her husband, James Erby, is her administrator.''

After the first trial of this case, and at which trial Paralee Erby testified as a witness in her own behalf, and before the trial of the case resulting in the verdicts appealed from, Paralee Erby died, and the case was duly revived in the name of her husband, James Erby, who had qualified as the administrator of her estate.

The third assignment of error directed to the above-quoted portion of the charge must be considered in connection with the fourth assignment, which is directed to the following portion of the charge of the court:

''I instruct you, gentlemen of the jury, that a husband is entitled to recover such a sum as will reasonably compensate him for the value of his wife's services in the event he loses her services due to the negligence or fault of another. If you find in the case of James Erby against the railroad company from the greater weight of the proof in that case that his wife was injured as it is insisted by the plaintiff, James Erby's declaration, she was injured through the fault and negligence of the defendant, then the plaintiff, James Erby, would be entitled to recover from defendant railroad company such a sum of money as would reasonably compensate him for the loss of his wife's services which he has sustained by reason of her said injuries, if any, and would also be entitled to recover such sums of money as he has paid for medical treatment and nursing in endeavoring to have his wife cured of her said injuries.''

It is the contention of defendant under these two assignments of error that the court, by these portions of the charge above quoted, instructed the jury that James Erby in his own right, as well as the administrator of Paralee Erby, could recover for the amount of money paid for medical treatment and nursing, and that the charge, in effect, authorized a double recovery for the medical attention, doctors' bills, nursing and medicine.

There is no evidence in the record that Paralee Erby paid any part of the expense incurred on account of medical attention, nursing, medicine, etc., in connection with the injuries she sustained. It is shown by the evidence that all this expense was paid by James Erby, amounting to about $700. There is nothing in the verdict of the jury in the Paralee Erby case that indicates that the jury by its verdict included the items of expense referred to. The verdict of the jury in the Paralee Erby case did not make separate allowance for her personal injuries and for this expense. The verdict of the jury in the James Erby case of $750 would indicate that the jury intended to include in that judgment the expenses incurred for med-

icine, doctors' bills, nursing, etc., since the amount of the verdict would be excessive if it was for the value of the lost services of the wife alone, since the evidence would not warrant a recovery for that amount solely for the loss of services.

Since there was no evidence in the record that Paralee Erby paid any part of the expense incurred on account of the injuries sustained, it would have been proper for the court to have instructed the jury, that although her declaration alleged that she had paid this expense, there being no proof to sustain that averrment, she could not recover anything on that account. However, these were two separate suits. The declaration in the Paralee Erby case did aver that she had expended a considerable sum for medicine and medical treatment by doctors. The declaration in the James Erby case alleged that he had paid considerable sums, and had incurred considerable expense for medical treatment, medicines, etc., on account of the injuries to his wife. So far as the right of the respective parties plaintiff to recover any amount, these cases must be treated as separate cases. The rights of the respective parties plaintiff to recover under the respective declarations is controlled by the proof. The cases were consolidated by consent of parties and tried at the same time by the same jury. There was clearly no error in the charge of the court with reference to the right of recovery of James Erby under his declaration and the proof for these items of expense. While we agree that both parties could not recover for this expense, yet we cannot say that it affirmatively appears that the jury by its verdict allowed a recovery in the Paralee Erby case for these items. The jury was instructed by the court in this portion of its charge with reference to the case of Paralee Erby, that the administrator would be entitled to recover for this expense "if any was incurred." We must assume that the jury understood from this language of the court that if no expense was incurred by her for medical attention, nursing, etc., that no recovery could be given her for those items, since there was no proof in the record that she incurred any part of that expense.

It is provided by chapter 32 of the Public Acts of 1911: "That no verdict or judgment shall be set aside or new trial granted by any of the appellate courts of this state, in any civil or criminal cause, on the ground of error in the charge of the judge to the jury, or on account of the improper admission or rejection of evidence . . . unless, in the opinion of the appellate court to which application is made, after an examination of the entire record in the cause, it shall affirmatively appear that the error complained of has affected the results of the trial." Applying the provisions of this Act to the alleged error of the court in the charge above quoted, we cannot say that it affirmatively appears that the verdict of the jury was

affected by the charge. This applies also to the admission of the evidence complained of under the fifth and sixth assignments of error.

By the second assignment of error it is insisted that the verdict of the jury in the respective cases is excessive, and indicates passion, prejudice, or caprice on the part of the jury.

There was a decided conflict in the evidence as to the nature and extent of the injuries sustained by Paralee Erby. At the time she made the trip on which she received the injuries sued for, she had been to see her physician who lived in the nearby town. She had been receiving treatment from this physician for about eighteen days prior to her injury. It was her custom to go to see this physician every other day for treatment, and she had received the ninth treatment on the day she received the injuries sued for. Both Paralee and James Erby testified that she had been regularly at work on the farm during the summer, and had worked in the fields with her husband, assisting in making a crop; that she had developed a stomach trouble and was being treated by the physician for that trouble. After she was injured, and on the same day, this doctor was called to see her and to treat her for her injuries. He testified that when he saw her after the accident he found her suffering from injuries to her knees and bruises on her body. He did not attend her after that visit. He stated that she had been suffering with pellagra, and described the symptoms of pellagra and stated that they were present in her case, and that he had so advised her. She denied that she was afflicted with that malady, or any other serious illness, and stated that this physician, Dr. Howard, who had been treating her, told her that she had stomach trouble, and that the sores on her hands and arms were the result of sun blisters. At the time she received her injuries she was about forty-five years of age and weighed about 155 pounds. It is undisputed in the record that she was severely and painfully injured when she fell from the train. She fell with such force and violence as to render her unconscious for several minutes. She was unable to walk the distance from the station to her home, but was taken to her home in an automobile by the wife of the station agent, and was confined to her bed for several months, during which time she suffered from injuries to her back and side. A few days after the accident occurred she developed a type of pneumonia, and pluerisy. At the time of her death she had tuberculosis. All of the doctors who testified in the case stated that pneumonia of this type could result from a severe fall. On the same night that she received the injuries, and after Dr. Howard had seen her, she called a colored doctor from Knoxville, who both she and her husband state had been their regular family doctor, with the exception of the treatment given her by Dr. Howard referred to.

This colored doctor reached the home of plaintiff on the night of the accident, driving by automobile from Knoxville, a distance of about forty miles. He continued to treat her up for several months. He testified with reference to the injuries from which she was suffering, and that as a result of the fall she developed pleurisy and pneumonia. He stated that she was down with pneumonia about two months; that she developed complications with pneumonia that lasted about two months; that she seemed to have exudation of fluid in the pleural cavity and abdomen, and that developed tuberculosis of the bowels. He described the type of pneumonia as "traumatic," and stated that it would result from a fall. A Doctor Nash testified that he saw Paralee Erby in October, 1925, more than a year after she had received the injuries. He stated that he made a special examination of the patient, and also procured the history of her illness from statements made by her to him, and inquired into all the symptoms. He stated as follows:

"Physical examination shows her heart to be normal; right lung shows pronounced evidence of disease; traces found influenza in 1919; blood pressure 124; distinctive marks of pellagra on back of hand, neck and intestines; pulse regular; temperature ninety-nine; respiration, twenty—short and shallow; that is, her breathing if twenty-five per cent faster than normal and she breathes very short. Internal examination showed her womb to be enlarged, misplaced and inflamed—rectum—a chronic inflammation of her rectum. She had external hemorrhages—piles; her abdomen was large; peritoneum thickened; that is, the coat that surrounds the intestines was thickened and nobular, that discharges, bad vaginal discharges with showing of blood; at times rash on arms and hands, that had been there about fifteen years. Admits foul smelling discharges from vaginal with blood; admits declining health, gradual loss of weight, and admits she has fever in the evening; admits slight swelling in the feet and ankles; admits pain in abdomen not intent, but continuous; admits symptoms of chronic pellagra. Her diagnosis was different from my examination."

The above statement by Dr. Nash was from the notes he made in obtaining the history of the case from the patient. He then states that her condition was not the result of the fall. He was asked and answered as follows:

"Q. What was the cause of her trouble? A. Chronic pellagra, infected with influenza in 1919, and at the time I saw her, tuberculosis.

"Q. How long had she had that disease? A. For some years.

"Q. How many years had that condition existed? A. I don't know how long a time but there was nothing acute about it; it was all chronic condition."

The witness then describes the symptoms of pellagra.

As above stated there was a considerable conflict in the evidence. The physicians who testified seemed to testify intelligently, however, they differ materially. It is true Dr. Watkins is a colored physician, but he testified with apparent intelligence and frankness. The evidence to the effect that this colored woman, until shortly before she began receiving treatment at the hands of Dr. Howard, who treated her every other day for about eighteen days before this accident, was physically able to do farm labor, and assisted in the farming operations of her husband, and working in the field, is undisputed, and would negative the idea that she had been seriously afflicted with chronic pellagra for several years prior to the time she received the injuries complained of. She was not confined to her bed until after she received the injuries, and from that time on she was confined to her bed almost continuously. There is no dispute in the record but that she developed pneumonia and pleurisy soon after she received her injuries, and the preponderance of the evidence is to the effect that the type of pneumonia and pleurisy from which she was suffering can be caused, and frequently is, the result of a fall or bruise.

There being a decided conflict in the evidence as to the extent of the injuries she sustained, and the cause of her serious illness which followed the injury, it became a question for the jury to determine. If they believed the evidence of plaintiff's witnesses as to the nature and extent of the injuries, and accepted that evidence, we cannot say that the verdict of $2000 was excessive. This was a jury composed of white men, and both plaintiffs were colored people. There was material evidence to support the verdict, and where there is a conflict in the evidence on any question involved in the case, and the facts are resolved by the jury, the verdict of the jury will not be disturbed on an appeal, unless the amount of the verdict is so excessive as to indicate passion, prejudice or caprice on the part on the jury, and as above stated, if the jury believed the evidence of plaintiff's witnesses as to the nature and extent of the injuries, we cannot say that under that evidence, the verdict of the jury indicated either passion, prejudice or caprice.

What has been said with reference to the verdict in the Paralee Erby case applies also in the case of James Erby.

It results that all assignments of error are overruled, and the respective judgments in the respective cases are affirmed. Appellant and sureties on the appeal bond will pay the costs of the appeal in the two cases.

Owen and Heiskell, JJ., concur.